May it please the Court, I am Alex Morgan. I'm representing the plaintiffs, Gordon B. Saucerman et al., and I would just like to express my thanks at the Ninth Circuit appearing here in Arizona and allowing me to appear in my home state. We're happy to meet you. The primary question in this case is a question of jurisdiction, two separate matters of jurisdiction. The first question is did the district court have subject matter jurisdiction to entertain the tribal defendant's motion for attorney's fees? The second question is did the tribal government, the Chemehuevi tribal government, have jurisdiction over my clients, including the tribal court? The district court answered both of those questions with an affirmative. They did so, the district court did so without holding a hearing. It did so primarily based on the motion filed by the tribal defendants. The tribal defendants' motion, as I've put in the brief, was not a standard attorney's fees motion. It was not based on there being a prevailing party under Federal law. And the tribal defendants conceded that fact in the motion, citing to the case of Branson v. Knott that a dismissal for lack of subject matter jurisdiction would not make them a prevailing party. The tribal defendants then cited Hardin v. Apache White Mountain Apache, which requires an examination of whether the tribal government did, in fact, have jurisdiction over my clients. The tribal defendants cited the actual ordinance of the Chemehuevi tribal government. And they also asked for sanctions to be applied to us via local Rule 1.5F, which is an application of Rule 11. I understand there was an underlying case, right? Yes, Your Honor, there was. And that was a contest over whether your clients could remain on these parcels of land they were leasing? Ramping. The actual complaint was, in fact, over the tribal court's authority to have jurisdiction to evict them. By raising the test we did lose. It was upheld. And then the Chemehuevi brought an action seeking attorney's fees. Yes. And you didn't respond? We did not. We did not respond. And I will next explain that. To have responded, we were put into a dilemma. If we had responded and told the district court, you don't have subject matter jurisdiction because both the district court and the Ninth Circuit have agreed that this case cannot be heard due to lack of subject matter jurisdiction, we would be foregoing the opportunity to actually have the issue of the tribal government's jurisdiction over our clients heard. A motion to dismiss doesn't admit jurisdiction, does it? The nature of the ---- Can you start with an answer? Yes. A motion to dismiss. You could have filed a motion to dismiss, and that does not admit jurisdiction, does it? It was not actually a separate question, Your Honor. It was a motion for attorney's fees. It was not ---- You could have responded to it by saying the court doesn't have jurisdiction to entertain the motion, correct? We could have. If we had done that, we would have run the risk of not having the opportunity to be heard on the one question that we have been wanting to be heard. Why would that be? You lost it already. So the situation you put the court and the other counsel in is you basically abdicate, and now you're complaining that the local rules kicked in to foreclose any argument on the attorney's fees. So it seems to me you can't lie in the bushes and see how things turn out. You had an obligation to tell the court one way or the other. You could have said to the court, we're filing this in the alternative or under protest, claiming no jurisdiction, but we don't want to lose our opportunity, and we don't want to waive any other rights over here. Why couldn't you have filed a paper like that? Because the case of Inyo County had not come down from the Supreme Court. The Ninth Circuit's ruling up to that time was of the position that if a tribal government comes into court on Section 1983, which is, in fact, the main basis the tribal defendants brought their motion for attorney's fees, that a non-tribe does not have the right to defend against them. They can claim tribal immunity. That decision was overturned during the course of this litigation when Inyo County came in, but at the time, we would have we faced the choice basically between shooting ourselves in the foot or cutting our own throat. Neither choice. I'm still having trouble understanding why you faced that dilemma if you advised the court of what you perceived as a dilemma. Well, then the issues would be on the table, basically. But instead, if you do nothing, now you're coming in and I take your argument to be that the court improperly used local rule 1.10 to grant the fees. I mean, that's the primary gist of your argument, correct? That is a part of the question of the argument, Your Honor. The problem is before the court could rule on the tribal defendants' motion for attorney's fees, the court had to decide whether it was retaking subject matter jurisdiction, which we can't consent to, nor can we waive. The other problem is if they chose to apply it as a sanction, they would still have to have a hearing to see if the sanctions were justified. It couldn't be decided just based on our decision not to have it. So your plan was to just sit tight and do nothing? I mean, that's the question. What did you think would be the obvious outcome of that strategy? It was considered quite likely that the district court, by myself, I considered it was not at all surprising that they would just refuse to consider it. You mean they have a motion for attorney's fees, and the district court, sua sponte, would say, well, I haven't heard from the other people. I guess I'll just sort of put this over here. Based on their lack of subject matter jurisdiction, yes, Your Honor. Absent a challenge to subject matter jurisdiction? The court had to affirmatively take that. I have to say the general proposition sitting moved is probably not a good strategy because you're going to force the court to guess. And why the court should have guessed, well, we don't have subject matter jurisdiction, so we can't entertain this, what is essentially a procedural kind of motion, which the court could have jurisdiction over even if it didn't have subject matter jurisdiction under the underlying case. If you have come into the courtroom, I don't know why, because the court decides it doesn't have subject matter jurisdiction in the underlying case, you assume the court doesn't have power to do something that relates to what you've done while you were in the courtroom. I don't see that connection. What's the basis of that connection in your mind? The basis, Your Honor, in my mind is that this was not an ordinary motion for attorneys' fees because it asked the district court to apply tribal law as comedy. It did not base it on a routine application of Federal law being the prevailing party in a Federal court action. Multiple grounds for it. And it's true that one of them was tribal law comedy, but it's also submitted as the prevailing party under a 1985, a 1988 record. So why could the court not deal with it? Well, Your Honor, the Ninth Circuit recently released the Golden Global Renaissance, which specifically defines what a 1983, 1988-type claim is. And in that one, it clearly defines that it is only awarded on a civil rights claim vindication, which wasn't actually the nature of what was being presented. If you have about a minute left, you can continue to argue, or you can reserve it. I will reserve. Okay. Thank you for your argument. We'll hear from the Tribal Council at this time. Mr. Marston. Good morning, Your Honors. Good morning. My name is Les Marston with the law firm of Rappaport & Marston. I'm here on behalf of the Chimoe V. Tribal Council and the individual tribal officers who were sued in this case, including Robert Moeller, the Honorable Robert Moeller, the Chief Judge of the Tribal Court. The underlying facts of this case are not before the Court. We're not here to argue the merits of the underlying case. We're not here to argue the merits of the attorneys' fees motion. What's before the Court is whether or not the district court abused its discretion in denying the motion for rehearing. That's what's been appealed. That's what's before the Court. This Court in 389 Orange Street v. Arnold established the standard for determining whether or not a district court abused its discretion in denying a motion for rehearing. And in that case, this Court stated that, first of all, the granting of a motion for rehearing should only be granted in highly unusual circumstances. And the Court specified only three circumstances which met that standard. And that is if there's a change in the controlling case law, if newly discovered evidence is presented to the Court, or if the Court committed clear error in granting the motion. First of all, there has been no newly discovered evidence presented to the Court. There was no change in the case law. And I'd like to say that Inyo County has no application in this case. In Inyo County, the United States Supreme Court held that a tribe was not a person within the meaning of 1983. Therefore, the tribe could not bring a 1983 cause of action. The tribe in this case did not bring a 1983 cause of action. We were sued by the plaintiffs in this case under 1983. The 1983 cause of action was brought against us, and we prevailed on that motion. And therefore, as the Court pointed out, we brought a motion for attorneys' fees under 1988. And we believe that we were entitled to attorneys' fees under 1988, because under 1988, a defendant can recover attorneys' fees if a frivolous lawsuit has been brought. And there's evidence in the record to show that this case was a frivolous lawsuit. These plaintiffs that were relitigating issues they had litigated before, these plaintiffs were trying to litigate issues that they had actually signed covenants not to sue in settlement of prior litigation. So they were trying to relitigate those claims. So we felt we were entitled to attorneys' fees under 1988. But again, that's not the issue. Well, I think it may be on one level. Is there a fair error? And one of the reasons for fair error would be there wasn't a legitimate basis under the law for the word attorneys' fees. And you've got a fair error standard behind that, or it's the question of whether the motion was legitimate. Well, the motion was legitimate. And this was the question. I want to ask you a couple of questions about that. I was looking at the time entries there, and I see at least some time entries that refer not to this action, but appear to refer to the action pending in the tribal board. Now, did you submit time, trial time and attorneys' fees in this case for time actually spent on an action that was pending in the tribal board? Yes. What's the basis for that? Well, again, our basis was that the Court could afford comity to the tribal law that stated that a prevailing party in any action is in any action which the tribe is a party is entitled to attorneys' fees. Well, shouldn't, if the time was spent in that lawsuit, in that court, shouldn't you ask that court for it? Did you tell this court that you were asking this court for fees for time spent in that action? Yes, we did. It was in our motion. It was very clear. Well, what's the authority for this court to award attorneys' fees, not as damages, but attorneys' fees for an entirely separate litigation? Because, again, under the United States v. Washington, this Court has said that the Federal courts can give comity to tribal law. Well, comity means recognize the law, but this is not recognizing the law. This is paying money for an entirely separate action. I mean, this Court has to recognize California law. The fact that the tribe has a lawsuit pending in California and an attorney's fees there doesn't mean under comity, this Court in this Arizona action can award fees for time spent in a California action, does it? Well, again, I don't think that that issue that you are raising is before the Court. The question that you state. I state my hypothetical. Well, suppose we could do these time entries and discover that most of the time, this is not true, discover most of the time has nothing to do with this lawsuit. It was just stuck in there. Couldn't that be a basis to argue that the Court was clearly wrong in awarding these attorney's fees once that's brought to its attention? No, and I'll tell you why. Because the basis by which the Court awarded attorneys' fees was the local rule. And this Court in Briggs v. Lewis was faced with a very similar case. In Briggs, a moving party had filed a motion for summary judgment. The nonmoving party failed to answer. And the Court, this Court had to determine whether or not the granting of the motion for summary judgment was an abuse of discretion. Did the Court abuse its discretion in granting the motion in reliance on the local rule? And this Court specifically stated that it did not, that the district court had the district court, in fact, it was the district court for the District of Arizona applying the very local rule that is at issue in this case. This Court said that the district court cannot rely on that local rule in granting the motion. So does that mean that we don't look behind to the merits and it's ineffective, it's simply a default? Yes. I don't think you look beyond the merits. But in a summary judgment case where the attached pivotal affidavit or declaration is in fact from an unrelated case and has nothing to do with the merits, but there's no response to the motion, a district court has no obligation, no duty to examine the background, nor do we, they simply say granted and we say affirmed? Well, to answer your question, I think that in a summary judgment motion under Rule 56, which has different standards than a motion for attorney's fees, that yes, maybe the district court does have an obligation to look to see that there is a, that there's no material dispute of facts and that there's only issues of law to be resolved. Well, that's the Henry v. Gill case precisely, isn't it, where we say you can't just grant a summary judgment based on a local rule that's inconsistent with the rules. Yes. But you're not, in this case, you're not confronted with a motion for summary judgment. In this case, it's a motion for attorney's fees. What's the nexus between the activities in tribal court and this, the underlying action? Okay. And the entitlement to fees. Okay. Again, I'm going to answer that. But before that, I don't think that the Court needs, I don't think the Court looks beyond. Humorous. Okay. The nexus is that they brought this action, they brought a motion for a temporary restraining order to actually enjoin the tribal court action. And the action in the very issues that were litigated in the district court was whether or not the tribal, that they attempted to litigate in the district court, is whether the tribal court had jurisdiction over the plaintiffs. And they were basing that jurisdiction, they were basing their claim that the tribal court lacked jurisdiction on the grounds that the reservation wasn't lawfully created. You told us that the fee application alerted the district court that some portion of the requested fees resulted from activities in tribal court, right? That's correct. We submitted contemporaneous time records that itemized all of the work that we performed. Did you tell the district, did you apportion for the district court's consideration what fees were spent in defense of the affirmative action brought by the Susserman plaintiffs as opposed to what went on in tribal court? No, we did not. We didn't specifically break out and say these are the amount of time that we spent in Federal court and this is the amount of time that we spent in tribal court. I don't see any reference to what you just described, alerting the court that these fees over here would refer to different actions. What I see is something that says the cost of the infringement in this case. Is there anything in the moving papers other than going through the attachments that we have? No. It's just in the contemporaneous time records that we have. So when we read the time records and put it backwards to this time, it says tribal courts are probably going to do this action. Let me just say this, and that is the time that was spent in tribal court was very short. We served it. They failed to respond. We entered a default judgment. After the default judgment was entered, we went in on a writ of assistance. We served the writ of assistance. The writ of assistance was given to BIA police, and they went out and served it. So the total amount of time that's attributable to the tribal court action is de minimis. I mean, the vast majority of the time that was claimed, probably 95 percent of the time claimed, maybe even more was for work that was done before the Federal court. I have 13 seconds. I would just like to close by saying that, you know, the Chimoy of the Indian Tribe is not a rich tribe. It has spent thousands of dollars in defending these frivolous actions, money that it would otherwise spend to provide essential governmental services on the reservation. The district court did not abuse its discretion in granting the underlying motion for attorney's fees. It had the right to rely on the local rules within the inherent authority of the court as granted and delegated to it by Congress. And you're out of time. Thank you. Thank you for your argument. Rebuttal, Mr. Morgan. Thank you. The point I wish to stress in conclusion is that we are appealing from the district court's order of July 11th, 2003, which does not only deny the motion for rehearing but spends a great deal of time revisiting the entire history of the litigation. The order of July 11th makes specific findings regarding the lawful orders, as I quote, of the Chimoy Tribal Court. It basically is finding that the Chimoy government does have jurisdiction over our clients, even though it has not held any hearing and given anybody a chance to actually litigate that question. That is the clear error that took place in denying the motion for rehearing. As to Mr. Marston's claim of re-litigating issues, it is true that my clients have in vain sought their day in court. The issue of the tribe's jurisdiction over them has never been litigated because it is never heard. The quiet title dismissal happened not only on this occasion but on another suit that I had nothing to do with in the early 90s that took place in California. This issue has not actually ever had a ruling on the merits other than the ruling of July 11th, which makes specific findings without evidence having been presented regarding it. Finally, the district court did, in fact, address the merits of the underlying case in the July 2003 order without ever deciding whether or not the district court had subject matter jurisdiction over the motion, and that is also clear error. Okay. Thank you for your argument. Thank both counsel for their argument. The case just argued will be submitted for decision. We'll proceed.
judges: Hawkins, McKeown, Clifton